❏ Original

**CLERK'S OFFICE**
**A TRUE COPY**
Apr 18, 2022
s/ Michael Longley
**Deputy Clerk, U.S. District Court**
**Eastern District of Wisconsin**

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Information associated with Facebook account "kenta.tittle.1", User ID no: 100004948413961, that is stored at premises controlled by Meta Platforms, Inc. | ) ) ) ) |

Case No.  **22-M-415 (SCD)**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____5-2-22_____ *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Stephen C Dries_____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:   _____4-18-22 10:25 am_____     _____*Judge's signature*_____

City and state:   Milwaukee, WI     _____Honorable Stephen C Dries_____
                                                    *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This search warrant applies to information stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California, associated with the following Facebook account:

Username: kenta.tittle.1  (www.facebook.com/kenta.tittle.1).

User ID No.: 100004948413961

Display Name: "Allgrind No Breaks"

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities August 9, 2021, to the present;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from May 1, 2019, to the present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook

group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user August 9, 2021, to the present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account August 9, 2021, to the present;

(m)     All information about the user's access and use of Facebook Marketplace;

2

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

3

**II.    Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 371, 922(a)(6), 922(g)(3), 922(u), 924(a)(2), and 924(i)(l), involving Kenta D. TITTLE since August 9, 2021, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)    The thefts carried out at federal firearms licensees on October 9 and October 10, 2021, the unlawful possession of firearms, and false statements during firearms transactions;

(b)    Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c)    Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d)    The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

4



CLERK'S OFFICE
A TRUE COPY
Apr 18, 2022
s/ Michael Longley
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with Facebook account "kenta.tittle.1", User ID no: 100004948413961, that is stored at premises controlled by Meta Platforms, Inc.

)
)
)
)
)
)
)

Case No.    **22-M-415 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sections 371, 922(a)(6), 922(g)(3), 922(u), 924(a)(2) and 924(i)(1) | Conspiracy, Stealing firearms, False statement to a licensed firearms dealer, Possession of a firearm by unlawful user of a controlled substance. |

The application is based on these facts:

See Attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

BRADLEY KURTZWEIL     Digitally signed by BRADLEY KURTZWEIL
                      Date: 2022.04.18 09:53:37 -05'00'

*Applicant's signature*

Special Agent Bradley Kurtzweil, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:  4-18-22

*Judge's signature*

City and state:  Milwaukee, WI

Honorable Stephen C Dries, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Bradley Kurtzweil, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since March 2020. My duties as a Special Agent with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes. During my time as an ATF Special Agent, I have investigated cases involving firearms, narcotics, gangs, arson, and fraud. I have received training in the investigation of firearms trafficking, and I work alongside several senior ATF agents who have worked extensive firearms trafficking investigations in the past. Prior to my employment with the ATF, I was a sworn Police Officer in the State of Illinois from March 2011 to March 2020. I served as a patrol officer and evidence technician.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 371, 922(a)(6), 922(g)(3), 922(u), 924(a)(2), and 924(i)(l) have been committed by Kenta D. TITTLE, born xx/xx/2000, of Milwaukee, Wisconsin, and Robert K. LOVE, born xx/xx/1994, of Milwaukee, Wisconsin.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5.     On October 9, 2021, at approximately 11:10 a.m., two men entered Ron's Gun Shop at N112W16340 Mequon Road, in Germantown, Wisconsin.  One of them ("Suspect 1") was wearing jeans, with blue shorts or briefs visible underneath, a gray hooded sweatshirt, and had a yellow hat or wrap on his head. The other man ("Suspect 2") was wearing black pants, a black t-shirt with a large orange "V" and the numbers "9 9 9" on the back of the shirt, sunglasses, and a black camouflage wrap on his head. Both men had cell phones in their hands. Neither subject was wearing a mask or face covering.

6.     Ron's Gun Shop is a federal firearms licensee (FFL). The store is equipped with a video surveillance system, which captured and stored footage of the events discussed herein. (Of note, while reviewing surveillance footage from Ron's, I observed the video time stamp to be ahead of the true and accurate time by approximately 20 minutes, which

2

included the footage from October 9. I made this determination by comparing the video system's live clock and the correct time from my automatically updated ATF-issued cell phone. The store owner was aware the time was off and stated he had not updated the system recently.)

7.       After entering the store, Suspect 1 engaged a store employee who was on the phone in conversation. In doing so, Suspect 1 positioned himself so that Suspect 2 was not in the employee's line of sight. At the time of the theft, there were no other store employees or customers present in the business.

8.       As Suspect 1 spoke with the store employee, video footage shows Suspect 2 reaching over a gun case. He slid the unlocked door open, and removed two handguns (a Ruger Max-9, 9mm pistol bearing serial no. 350062131; and a Smith & Wesson M&P 9, 9mm pistol bearing serial number NKP8131) from the case. Suspect 2 then quickly concealed the handguns in the front of his waistband under his shirt, and slid the gun case door closed. Suspect 2 signaled Suspect 1 with a head nod and both left the shop on foot, running east from the shop location. (See Figure 1, 2 and 3 below).

3

 

Figure 1 (Suspect 1)          Figure 2 (Suspect 2)

4



Figure 3

9.     The next day, on October 10, 2021, at approximately 6:25 p.m., two men

entered the "Gun Library," located inside the Cabela's department store at 1 Cabela Way,

in Richfield, Wisconsin. Cabela's is a federal firearms licensee. The store is equipped with a

video surveillance system, which captured and stored footage of the events discussed herein.

10.     Having viewed and compared the surveillance footage taken from both stores,

it appears that the two men in the Cabela's "Gun Library" at 6:25 p.m. on October 10 were

the same individuals who were at Ron's Gun Shop at around 11:10 a.m. the previous day as

described above. More specifically, one of them was wearing jeans, with blue shorts or briefs

Case 2:22-mj-00415-SCD   Filed 04/18/22   Page 13 of 42   Document 1

visible underneath, a black tank top, and had an orange hat or warp on his head. In addition to the similarity in clothing, the man's height and build matched the depiction of Suspect 1. The second man was wearing black pants, a black t-shirt with a large orange "V" and the numbers "9 9 9" on the back of the shirt, sunglasses, and a black camouflage wrap on his head. In addition to the similarity in clothing, the man's height and build matched the depiction of Suspect 2. (See Figures 4, 5 and 6 below).

 

Figure 4 (Suspect 1)        Figure 5 (Suspect 2)



Figure 6

11.     Aside from Suspect 1, Suspect 2, and a store employee assisting them (all shown in Figure 6 above), there was one other individual present in the Cabela's "Gun Library" at the time.

12.     The Cabela's employee opened a locked gun case and handed a firearm to Suspect 1. While Suspect 1 was examining the firearm, Suspect 2 squatted down in front of the now unlocked and open case and removed a firearm (Glock 41 pistol, .45 Caliber, Serial Number ZTC059). The store employee was momentarily distracted as he moved to close the case, and Suspect 2 concealed the Glock next to his right leg while turning away from the employee. He then hid the gun in his rear pants pocket and covered it with his shirt. Suspect 2 signaled Suspect 1 by tapping on his shoulder/arm. Suspect 2 then handed the gun in his hands back to the employee. Both suspects left the store and appeared to enter a vehicle in the store's parking lot. (This footage is somewhat obstructed by trees and other vehicles, and is also less clear due to the distance from the surveillance camera.)

7

13.     Shortly after the thefts from Ron's and Cabela's discussed above, police sought help from the public in identifying the suspects. They shared video stills on social media. The story was also picked up and published by local news outlets. Law enforcement received several tips. Among them, on or about October 20, 2021, was an anonymous claim identifying Suspect 1 as Kenta D. TITTLE of Milwaukee. It was also related that Suspect 2 was a "brother" "by blood" of TITTLE's. As detailed further below, law enforcement learned TITTLE had visited a number of federal firearms licensees in the Eastern District of Wisconsin in 2021.

14.     As mentioned earlier, my review of surveillance footage from Ron's Gun Shop suggested that the two suspects ran eastward from the store at approximately 11:11 a.m. on October 9, 2021. I was able to review surveillance video from an Ace Hardware store located approximately 250 feet east of Ron's, in the same strip mall. (The Ace video system's timestamp was ahead of the true and correct time by about 18 minutes. I made this determination by comparing the video system's live clock and the correct time from my automatically updated ATF-issued cell phone. I was informed by an Ace store employee that their camera system had not been updated recently.)

15.     Shortly before 11:30 a.m. on October 9 (according to the time stamp on the video footage, which corresponds to 11:11 a.m. in real time), the Ace store's exterior cameras captured a dark colored (possibly blue) SUV/hatchback driving east at a high rate of speed from the direction of Ron's. The vehicle disregarded a stop sign in the parking lot, while traveling east out of camera view. The vehicle did not have a front license plate but appeared to have a temporary plate on the rear of the vehicle (*See* Figures 7, 8 and 9 below).

8



Figure 7



Figure 8

9


Figure 9

16.     Local police identified the vehicle shown in Figures 7, 8, and 9 as a 2008-2011 Volkswagen Tiguan.

17.     Less than two weeks earlier, on September 28, 2021, TITTLE was detained by the Milwaukee County Sheriff's Department during a routine traffic stop. TITTLE was driving a blue 2011 Volkswagen Tiguan bearing a temporary Wisconsin license plate, UXXXXV. The car was registered to A.R., believed to be TITTLE's sibling, with an address of 7734 N. Pointe Street in Milwaukee. Robert K. LOVE of Milwaukee is the father of A.R.'s children. TITTLE provided a Wisconsin photo identification card bearing the address of 7734 N. Pointe Street.

18.     While conducting surveillance of 7734 N. Pointe Street, on October 29, 2021, I observed the Volkswagen Tiguan bearing temporary Wisconsin license plate, UXXXXV, parked in the driveway.

10

19.     I was able to obtain photos of TITTLE from the Wisconsin Department of Transportation, publicly available social media posts, and a recent booking photo from an October 12, 2021 arrest in Waukesha, Wisconsin. I also obtained screenshots from body-worn camera footage taken during the September 28 traffic stop. (See Figures 10, 11, 12, 13, 14, 15 below.)



Figure 10 (DOT Photo taken April 2021)    Figure 11 (Facebook from July 2020)



Figures 12, 13 and 14 (Body Cam stills from Traffic stop on September 28, 2021)

11



Figure 15 (Booking photo from Waukesha PD on October 12, 2021)

20.    It appears that LOVE is Suspect 2. I was able to obtain photos of LOVE from the Wisconsin Department of Transportation (*see* Figure 16), publicly available social media posts (*see* Figure 17), and a recent booking photo from an arrest on November 12, 2021, in Milwaukee (*see* Figure 18). Body-worn camera footage from the September 28, 2021 traffic stop of TITTLE also showed LOVE apparently present in the passenger seat of the Volkswagen (*see* Figure 19).





Figure 16                                              Figure 17

 

Figure 18                                    Figure 19

21.     At the time of the thefts, LOVE had open felony cases pending in Milwaukee and Waukesha Counties. He was therefore ineligible to purchase or possess firearms.

22.     As referenced above, TITTLE had visited a number of federal firearms licensees in the Eastern District of Wisconsin in 2021. The following paragraphs summarize these transactions.

23.     On or about April 9, 2021, TITTLE purchased a Taurus G2C 9mm pistol and a Glock 48 9mm pistol at The Shooters' Sports Center, a federal firearms licensee in Racine, Wisconsin. The Glock 48 was reported stolen by TITTLE to Milwaukee Police on or about June 14, 2021, and has not been recovered.

24.     On or about September 4, 2021, TITTLE purchased a Glock 19 9mm pistol from Dunham's, a federal firearms licensee in Brookfield, Wisconsin. TITTLE completed a federal Firearms Transaction Record (ATF Form 4473) and Wisconsin Department of Justice Firearms Dealer Notification (Handgun Transfer) form (hereinafter, "Wisconsin FDN").

13

25. On or about September 16, 2021, TITTLE purchased a Taurus G3 9mm pistol and Glock 21 .45 caliber pistol from Dunham's, a federal firearms licensee in Brookfield, Wisconsin. TITTLE completed a federal Firearms Transaction Record (ATF Form 4473) and Wisconsin FDN. The Taurus pistol was recovered by Milwaukee police on or about October 9, 2021, in the unlawful possession of a convicted felon.

26. On or about September 26, 2021, TITTLE purchased a Glock 21 .45 caliber pistol from Dunham's, a federal firearms licensee in West Allis, Wisconsin. TITTLE completed a federal Firearms Transaction Record (ATF Form 4473) and Wisconsin FDN.

27. On or about September 28, 2021, TITTLE purchased a Glock 20 10mm pistol and a Glock 21 .45 caliber pistol from the Dunham's location in Brookfield. TITTLE completed a federal Firearms Transaction Record (ATF Form 4473) and Wisconsin FDN. The .45 caliber Glock was recovered on October 7, 2021, in the unlawful possession of a juvenile.

28. On October 8, 2021, the day before the theft from Ron's Gun Shop, TITTLE purchased a Taurus G3 9mm handgun and a Glock 43 9mm handgun from Dunham's, a federal firearms licensee in Brookfield, Wisconsin. TITTLE filled out a Firearms Transaction Record (ATF Form 4473). He supplied his full name and an address of 7734 N. Pointe Street in Milwaukee. TITTLE also completed a Wisconsin FDN. TITTLE left the store with the two guns.

29. Dunham's is equipped with a video surveillance system, which captured this transaction. The video shows TITTLE completing the ATF Form 4473 and purchasing the firearms. TITTLE was wearing light colored jeans, with blue shorts or briefs visible underneath, and a gray hooded sweatshirt. He was accompanied by a male, believed to be

14

LOVE, wearing black pants, a black shirt, sunglasses, and a black camouflage wrap on his head.

30.    As described above and shown below in Figures 20, 21, and 22, the two males' attire and physical features have similarities to those shown in surveillance footage of Suspect 1 and Suspect 2 captured during the thefts at Ron's Gun Shop and Cabela's (Figures 1-6) during the two days that followed:



Figure 20



Figure 21



Figure 22

31.     On October 12, 2021, Waukesha police officers arrested TITTLE for marijuana possession and carrying a firearm while impaired. This occurred after TITTLE and two minors entered two FFLs and inquired about purchasing firearms, but were denied due to apparent impairment. Police seized the Taurus 9mm pistol that TITTLE had purchased on October 8.

32.     On or about October 14, 2021, TITTLE attempted to purchase a Taurus G3 9mm pistol at Dunham's, a federal firearms licensee in Franklin, Wisconsin. TITTLE completed a federal Firearms Transaction Record (ATF Form 4473) and Wisconsin FDN.

33.     On or about October 16, 2021, TITTLE again attempted to purchase a Taurus G3 9mm pistol at the Dunham's location in Franklin. TITTLE completed a federal Firearms Transaction Record (ATF Form 4473) and Wisconsin FDN.  This purchase was denied on October 22, 2021.

34.     To law enforcement's knowledge, TITTLE has purchased or attempted to purchase at least 12 handguns from federal firearms licensees since April 2021. The 10 purchased firearms include 7 Glock pistols (3 of which were Glock model 21s) and 3 Taurus pistols (2 of which were Taurus model G3s). As outlined above, TITTLE was denied the purchase of another 2 Taurus model G3s.

35.     On November 2, 2021, the Court issued a warrant, authorizing searches of, 7734 N. Pointe Street and the 2011 Volkswagen Tiguan bearing Wisconsin temporary registration UXXXXV. Agents executed the warrant on November 3, 2021. TITTLE was not present. TITTLE's mother, M.C., said that he had not lived at the residence in approximately 2 years and that they were not on speaking terms.  Inside the residence,

agents found ammunition, an empty gun box and paperwork pertaining to the September 28

Glock purchase detailed above, as well as a .45 caliber Glock magazine.

36.     At the time the November 3 search took place, the Volkswagen was not found

by law enforcement outside the 7734 N. Pointe Street address, and so the car was not

searched that day.

37.     On November 12, 2021, law enforcement located TITTLE and LOVE at 6263

N. 84th Street, Apartment #3, in Milwaukee (A.R.'s apartment). The Volkswagen Tiguan

bearing Wisconsin temporary registration UXXXXV was parked outside. The car was

towed to a Milwaukee Police Department impound lot.

38.     State investigators arrested LOVE on matters unrelated to this search warrant

application. They obtained a search warrant for the apartment, including electronic devices

found on the premises. TITTLE was also detained by State investigators temporarily

because he was present at the apartment at the time of LOVE's arrest.

39.     Agents attempted to interview TITTLE and showed TITTLE surveillance

photos from Ron's Gun Shop and Cabela's on October 9, 2021 and October 10, 2021.

TITTLE did not deny being present, but also said that he "didn't have knowledge of

anybody, you know, stealing firearms, taking firearms." TITTLE then invoked his right to

counsel and the interview was terminated.

40.     On November 15, 2021, a federal search warrant was executed on the

Volkswagen Tiguan bearing Wisconsin temporary registration UXXXXV. During the

search, a receipt was found in the car's glove box pertaining to TITTLE's purchase of a

Glock 21 from Dunham's on or about September 28, 2021 (detailed above). In the same

17

compartment, I located Wisconsin DMV and Department of Transportation paperwork, including an identification card receipt and temporary identification belonging to LOVE.

41.    On December 16, 2021, TITTLE's phone was extracted pursuant to a state search warrant by the Milwaukee County District Attorney's Office. The data extracted from TITTLE's phone indicated he is a frequent user of the social media platform, "Snapchat." Snapchat is a type of instant messaging application.

42.    Social media users often use more than one social media platform, and information obtained from the extraction of TITTLE's phone indicated that "Facebook," and "Facebook Messenger," were also installed on the phone. No Facebook messages appear in the extraction. However, a Facebook profile apparently belonging to TITTLE (see paragraph 44, below) appears in the extracted contacts from the phone. The extraction also indicates 274 searches for people on Facebook made from TITTLE's telephone.

43.    On April 5, 2022, a federal Grand Jury returned an 11-count indictment charging TITTLE with violations of 18 U.S.C. §§ 2(a), 371, 922(a)(6), 922(g)(3), 922(u), 924(a)(2), and 924(i)(1).

44.    During the course of this investigation, law enforcement identified a Facebook page apparently belonging to TITTLE, with the display name "Allgrind No Breaks," and username "kenta.tittle.1" (www.facebook.com/kenta.tittle.1). On October 20, 2021, I sent Meta/Facebook a preservation request for this account.

45.    Agents reviewed publicly available information on this page, and Figures 11 and 17, shown above, are derived from publicly viewable photographs linked to the page. In his main profile photo uploaded November 2021, TITTLE appears to be wearing the same

18

or similar jeans and shorts/briefs worn during the thefts (Figure 23), and a full version of

Figure 17 shows TITTLE and LOVE together in May 2019.

 

Figure 23                              (Figure 17, full version)

46.    Investigation also located through Tittle's Facebook page a photo posted on

September 2, 2021, which shows TITTLE with a firearm loaded with an extended

magazine, in his front waistband (Figure 24).  Based on my training, experience, and

knowledge of firearms it appears the gun in TITTLE's waistband is possibly a Glock

firearm.  As outlined above, TITTLE purchased several Glock pistols during 2021.

19



Figure 24 (minor's face redacted)

47.     While reviewing information from the phone extraction discussed above in paragraphs 41 and 42, I located a video which was recorded by TITTLE on or about November 10, 2021, showing TITTLE and another person in possession of firearms. A screenshot of Tittle is appended below at Figure 25. It should be noted November 10, 2021, is approximately a month after TITTLE was arrested in Waukesha.

Case 2:22-mj-00415-SCD   Filed 04/18/22   Page 28 of 42   Document 1



Figure 25

48.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

49.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal

identifiers. Each Facebook user is assigned a user identification number and can choose a username.

50.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

51.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

52.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about

22

upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

53. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

54. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. of the date of each call. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

55. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

56. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

57.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

58.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

59.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

60.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

61.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

62.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

63.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).   In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

64.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.   In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.   Further, Facebook account activity can show how and when the account was accessed or used.   For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators

25

can understand the chronological and geographic context of the account access and use

relating to the crime under investigation. Such information allows investigators to

understand the geographic and chronological context of Facebook access, use, and events

relating to the crime under investigation. Additionally, location information retained by

Meta may tend to either inculpate or exculpate the Facebook account owner. Last,

Facebook account activity may provide relevant insight into the Facebook account owner's

state of mind as it relates to the offense under investigation. For example, information on

the Facebook account may indicate the owner's motive and intent to commit a crime (e.g.,

information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting

account information in an effort to conceal evidence from law enforcement).

65.     Therefore, the servers of Meta are likely to contain all the material described

above, including stored electronic communications and information concerning subscribers

and their use of Facebook, such as account access information, transaction information, and

other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

66.     I anticipate executing this warrant under the Electronic Communications

Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using

the warrant to require Meta to disclose to the government copies of the records and other

information (including the content of communications) particularly described in Section I of

Attachment B. Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in

Section II of Attachment B.

26

## CONCLUSION

67. Based on the foregoing, I request that the Court issue the proposed search warrant.

68. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

69. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## ATTACHMENT A

### Property to Be Searched

This search warrant applies to information stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California, associated with the following Facebook account:

Username: kenta.tittle.1  (www.facebook.com/kenta.tittle.1).

User ID No.: 100004948413961

Display Name: "Allgrind No Breaks"

## ATTACHMENT B

## Particular Things to be Seized

I.    **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities August 9, 2021, to the present;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from May 1, 2019, to the present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook

group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)      All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)      All other records and contents of communications and messages made or received by the user August 9, 2021, to the present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)      All "check ins" and other location information;

(h)      All IP logs, including all records of the IP addresses that logged into the account;

(i)      All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)      All information about the Facebook pages that the account is or was a "fan" of;

(k)      All past and present lists of friends created by the account;

(l)      All records of Facebook searches performed by the account August 9, 2021, to the present;

(m)      All information about the user's access and use of Facebook Marketplace;

2

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

3

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 371, 922(a)(6), 922(g)(3), 922(u), 924(a)(2), and 924(i)(l), involving Kenta D. TITTLE since August 9, 2021, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)     The thefts carried out at federal firearms licensees on October 9 and October 10, 2021, the unlawful possession of firearms, and false statements during firearms transactions;

(b)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c)     Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.      such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

5

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____